## CONNETT et al. v. CITY OF NEW YORK.*

(Circuit Court of Appeals, Second Circuit. December 22, 1920.)

No. 86.

Bankruptcy ⊂⊃318(2)—Shipping ⊂⊃50—Owner of scows chartered to bankrupt, who removed city rubbish, held entitled to damages from city for cost of unloading.

Where, on bankruptcy of firm having contract for disposing of street sweepings of city, city took possession of scows and plant of such firm under its contract, and ordered owner of certain scows, chartered to the bankrupt and loaded by it, to unload such scows at some other place than the plant of the bankrupt, the city was liable to such owner for the cost of such unloading, and the city, in proving its damages against the bankrupt, could not recover such cost; neither the bankrupt nor the owner of such scows being under any obligation to discharge the cargoes anywhere except at the bankrupt's dumps.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by Lydon R. Connett and John B. Allen, copartners doing business under the firm name and style of L. R. Connett & Co., against the City of New York. From the decree, the plaintiffs appeal. Reversed, with directions.

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 254 U. S. —, 41 Sup. Ct. 535, 65 L. Ed. —.

Henry M. Stevenson, of New York City, for appellants.

John P. O'Brien, of New York City (John F. O'Brien, of New York City, and Charles J. Carroll, of Brooklyn, N. Y., of counsel), for appellee.

Before WARD, ROGERS, and MANTON, Circuit Judges.

WARD, Circuit Judge. L. R. Connett & Co. chartered 12 deck scows to Dailey & Ivins, who had a contract with the city of New York, dated August 13, 1913, for the final disposition of all ashes, street sweepings, and refuse collected by the department of street cleaning. March 2, 1918, receivers in bankruptcy were appointed of Dailey & Ivins, and between 11 and 11:30 a. m. on that day the street cleaning commissioner served the following notice on Dailey & Ivins:

"March 2, 1918.

"Messrs. Dailey & Ivins, New York—Dear Sirs: Under and by virtue of the powers and provisions contained in your contract dated August 13, 1913, the street cleaning commissioner hereby 'takes possession of the plant, scows, and other means of transportation and final disposition of the ashes, the street sweepings and rubbish, etc., belonging to or heretofore used by you.'

"Very truly yours,        A. B. MacStay, Commissioner."

At the time of the service of this notice the 12 scows which the libelants had chartered to Dailey & Ivins had been loaded by the street cleaning department at various dumps in the city and were to be discharged at the plants of Dailey & Ivins at Rikers Island, Hunts Point, and Staten Island. Seven of the scows were lying at the Dailey & Ivins plant at Hunts Point, where they had been taken to be unloaded, four were lying loaded at various dumping places of the city on the North, East, and Harlem Rivers, and one was lying partially loaded at the city's dump at 107th street and East River, the loading of which the department finished on the afternoon of March 2, subsequent to the service of the foregoing notice.

The city, under its contract with Dailey & Ivins, took possession of all their scows and plants, but not of scows chartered by them, and notified the libelants to move their scows from Hunts Point and from the city dumps and discharge them somewhere else. Thereupon the libelants with great difficulty did obtain tugs to tow the scows to places where they could be unloaded at an expense, including damages for delay, amounting to $8,513, to recover which this libel was filed.

The city answered that it had nothing to do with unloading the libelants' scows; the duty lying upon Dailey & Ivins to do so. March 5, the libelants wrote to the department a letter as follows:

"Department of Street Cleaning of the City of New York, Municipal Bldg., New York, N. Y.—Gentlemen: This will advise you that the undersigned is the owner of twelve scows which are now in the possession of Dailey & Ivins, of #15 Park Row, this city. Annexed hereto is a description of these scows and a statement as to their present locality. These scows are all loaded with ashes, street sweepings, etc., of the city, and for that reason cannot be delivered to the undersigned by Dailey & Ivins. We hereby notify you that we are entitled to the immediate possession of these scows, and demand that they be unloaded forthwith, so that they can be delivered to us without delay. You are further advised that we shall hold the city of New York re-

sponsible for any damages which result to us in case the scows are not promptly unloaded, so that they may be delivered.

"Yours truly,                                   L. R. Connett & Co."

March 9 the commissioner answered as follows:

"L. R. Connett & Company, 30 Church Street, New York City—Gentlemen: Receipt is acknowledged of your letter of March 5, 1918, concerning twelve (12) scows which, you state, are now in the possession of Dailey & Ivins of No. 13 Park Row, New York City. * * * These scows were loaded with ashes, street sweepings, and rubbish in accordance with a contract which the said firm of Dailey & Ivins had with the city for the removal and disposal of the same. The city of New York is not in any way involved with your arrangement with Dailey & Ivins for the hire or charter of these vessels, and you are hereby directed to immediately remove them from the water front dumps and unloading points where they are now moored.

"The matter of unloading their cargo should be adjusted with the firm of Dailey & Ivins. You are therefore advised that the city of New York hereby disclaims responsibility for the care and custody of these vessels, for the unloading of the same, and for any damage which may occur to them or for wharfage.

"Yours truly,                                   A. B. MacStay, Commissioner."

Shortly afterwards the libelants offered to pay the city the expense of unloading the scows. At the trial the city made the following admission:

"It is conceded that at the time in question, namely, March 2, 1918, to April 16, 1918, the possession and operation of the Dailey & Ivins plant at Hunts Point and Rikers Island was absolutely necessary to the city of New York for the final disposition of ashes, street sweepings, and rubbish which are collected in the boroughs of Manhattan and the Bronx, and that without this plant the city would have been unable to unload the scows and to dispose of the material; that it was impossible at that time to obtain other machinery and plant necessary to a proper disposition of the material."

The District Judge, holding that the city had nothing to do with the 11 loaded scows and that the libelants must look for their remedy to Dailey & Ivins, entered a decree for the libelants for the cost of discharging the twelfth scow, the loading of which was begun by Dailey & Ivins and completed by the city, in the sum of $572. From this decree the libelants appeal.

The receivers in bankruptcy never assumed the charters of the libelants' scows; the city was not in possession of them, and the libelants were. But the city owned the cargo, and was bound to let the libelants discharge it in the same way that Dailey & Ivins were under the duty of doing, to wit, at the Dailey & Ivins dumps, to which the scows were bound. Instead of this, its conduct was in the highest degree inequitable. It ordered the libelants to discharge its cargo somewhere or anywhere else. This was an entirely new departure. No such order could have been given under the contract with Dailey & Ivins, and the city, in proving its damages against them, cannot recover the cost of it. Neither Dailey & Ivins, as charterers, nor the libelants, as owners, of the scows, nor the scows themselves, were under any obligation to discharge the city's cargo anywhere except at the Dailey & Ivins dumps, which were in possession of the city. The libelants, by unloading them there at their own expense, would have performed the engagement of Dailey & Ivins and of the scows. The city, having or-

dered delivery of its property on the libelants' scows at a new and different destination, must pay for the expense of doing so.

The decree is reversed, and the court below directed to enter a decree in favor of the libelants for damages in connection with all their scows.